528 P.2d 1286

**TWIN FALLS FARM & CITY DISTRIB-
UTING, INC., an Idaho corporation,
Plaintiff-Appellant,**

v.

**D & B SUPPLY COMPANY, INC., an Idaho
corporation, et al., Defend-
ants-Respondents.**

**No. 10880.**

Supreme Court of Idaho.

June 13, 1974.

On Rehearing Dec. 20, 1974.

**352**

Eberle, Berlin, Kading, Turnbow & Gillespie, chartered, Boise, for plaintiff-appellant.

Doerr & Reed, Twin Falls, Dunlap, Rettig & Rosenberry, Caldwell, for defendants-respondents.

BAKES, Justice.

This appeal involves an alleged violation of the Idaho act prohibiting monopolies and unlawful restraints upon trade and commerce, I.C. § 48–101 et seq. The district court, hearing the case without a jury, found in favor of defendant-respondents D & B Supply, Inc., Robert W. Fries, Budd L. Kehne, John O. Deringer and Margaret Kehne, and against plaintiff-appellant Twin Falls Farm & City Distributing, Inc.

The chronological sequence of events giving rise to this appeal are as follows: Twin Falls Farm & City Distributing, Inc., hereinafter appellant, an Idaho corporation, was organized in 1961 for the purpose of conducting a retail outlet for the sale of farm supplies and automotive equipment at Twin Falls, Idaho. All of the officers and directors of appellant resided in Omaha, Nebraska. It opened in 1961 with respondent Robert W. Fries acting as general manager of the store. Fries was given complete management over the operation of the store and had supervisory control over two similar stores, one of which was located in Pocatello, Idaho, and the other in Burley, Idaho. The latter two stores were not owned by appellant, but by a sister corporation. The Twin Falls business was located at 250 Main Avenue North in Twin Falls in a building leased from Charles Haight of Burley, Idaho, who was a co-owner of the building. Both appellant and respondents agreed that the building at 250 Main Avenue North was the only suitable place in Twin Falls for such a retail operation. Appellant's lease of the premises at 250 Main Avenue North expired on December 31, 1961. Thereafter, appellant continued in the premises on a month-to-month basis, although Fries advised appellant that Mr. Haight desired a long term lease.

In May, 1963, Fries, while still employed as manager of appellant's retail store, and without the knowledge of appellant, commenced negotiations with Haight to secure a lease on the building for himself. Fries planned to open a business similar to

appellant's retail operation if he could acquire membership in a buying co-operative. In June, 1963, Fries contacted respondent Kehne, president of respondent D & B Supply, in an attempt to gain membership in the Mid-states Buying Co-operative of which D & B Supply was a member. Apparently that co-operative's rules gave D & B Supply a veto power over new members in its geographical area and Kehne, exercising his veto power, refused to let respondent Fries join the co-operative. This refusal by respondent Kehne effectively ended respondent Fries' chances of entering business for himself.

In June, 1963, respondent D & B Supply, wanting to open a retail farm supply store in Twin Falls, started negotiating through its president, Kehne, with Haight for a long term lease on the premises at 250 Main Avenue North. The evidence is conflicting regarding whether Fries told Kehne the nature of the lease arrangement between appellant and Haight while still manager for appellant; however, it is uncontroverted that Haight informed Kehne that the lease would go to the company with whom Fries was associated. When Fries was informed by Kehne that he would not be permitted to join the buying co-operative, Fries, who was still the manager for appellant, began negotiations with Kehne for the employment of Fries by D & B Supply.

On July 21, 1963, Kehne and Deringer, as officers of D & B Supply Company, signed a proposed lease for the corporation which had been prepared by Haight upon the premises at 250 Main Avenue North at a rent similar to that being paid by appellant. This lease was returned by them to Haight who held the proposed lease until September 11, 1963, when he finally returned the fully executed lease to Kehne.

On July 26, 1963, Fries sent a letter to Cornbelt Products Co., the parent corporation of appellant, in which he stated that if he did not receive certain stock in appellant which he claimed pursuant to his employment contract, he would resign as

manager of the store effective August 15, 1963. Shortly thereafter, Fries informed the employees of Twin Falls Farm & City that he would be leaving the employ of Twin Falls Farm & City and that he was going to be manager of the new D & B Supply Company store which was going to open in Twin Falls, and that there would be jobs available for them at that store.

On August 5, 1963, when it became apparent to Fries that he and appellant were not going to arrive at a satisfactory interpretation of his employment contract, he terminated employment with appellant effective August 15, 1963. At appellant's request, this was extended to August 20, 1963. Thereupon he immediately called Kehne to confirm his previously negotiated employment with D & B Supply. Fries was actually on the payroll of D & B Supply commencing August 15, 1963.

On August 20, 1963, Fries left Twin Falls Farm & City and immediately became manager for D & B Supply and began preparations to open a store for D & B Supply in Twin Falls, Idaho. Two days later, three employees of appellant left in the middle of the work day and immediately went to work for D & B Supply.

On September 11, 1963, D & B Supply took possession of the premises at 250 Main Avenue North and in mid-October, 1963, opened a retail outlet for the sale of farm supplies and automotive equipment at the former location of Twin Falls Farm & City, with Fries as the manager of the store and with the former employees of Twin Falls Farm & City.

As a result of the above events, appellant was forced to move its retail operation during the early part of September, 1963, to a less desirable location at a rent of $110.00 per month more than it had been paying for the premises at 250 Main Avenue North. In order to inform its customers of the new location of its retail store, appellant placed a sign in the window of a vacant building adjacent to the premises at 250 Main Avenue North. This sign was twice removed, at least once by respond-

ent Fries, sometime after the opening of respondent's store in October, 1963. Fries received permission to enter the building by the real estate agent in charge of the building, the agent apparently not knowing that appellant had rented the window space from the actual owners of the building.

Appellant alleged in its complaint that various acts and practices of respondents constituted unfair competition, attempted monopoly, and a conspiracy in restraint of trade within the purview of Idaho Code § 48–101 et seq. Specifically, appellant alleged that respondents conspired to procure the lease on the premises at 250 Main Avenue North, Twin Falls, Idaho; advised suppliers that appellant was no longer in business; diverted shipments ordered and intended for appellant; entered premises adjoining 250 Main Avenue North and tore down signs placed by appellant advising the public of appellant's change of business address; and pressured appellant's suppliers to boycott appellant and conduct business solely with respondent.

After a trial on the merits, the district court, sitting without a jury, held against plaintiff-appellant and in favor of defendant-respondents and entered findings of fact, conclusions of law and judgment. This appeal is taken from those findings and conclusions.

First, a brief discussion of the applicable statutes is in order. I.C. § 48–101 and § 48–104 provide as follows:

"48–101. Combination in restraint of trade illegal—Penalty.—Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce, within this state, is hereby declared to be illegal. Every person who shall make any such contract or engage in any such combination or conspiracy shall be deemed guilty of a misdemeanor, and on conviction thereof

shall be punished by a fine not exceeding $5,000 or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court."

"48–104. Unfair competition illegal—Penalty.—Every person, corporation, joint stock company, or other association engaged in business within this state, who shall enter into any contract, combination or conspiracy, or who shall give any direction or authority to do any act, for the purpose of driving out of business any other person engaged therein, or who for such purpose shall in the course of such business sell any article or product at less than its fair market value, or at a less price than it is accustomed to demand or receive therefor in any other place under like conditions or who shall sell any article upon a condition, contract or understanding that it shall not be sold again by the purchaser, or restrain such sale by the purchaser shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $5,000 or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court."

In order to come within the purview of I.C. § 48–101, there must be concerted action between two or more individuals, either in the form of a contract, combination in the form of trust, a conspiracy, or otherwise. However, I.C. § 48–104 does not require concerted action. A person acting individually can be in violation of the statute.[1] Violation of these statutes is both a crime and a basis for a civil action for treble damages and attorney fees. I.C. § 48–114.

Appellant argues that there were three actionable wrongs committed by some or all of the respondents for which relief should have been granted. The first incident involved Fries' breach of the fi-

1. Note that I.C. § 48–101 closely parallels section 1 of the Sherman Act, 15 U.S.C.A. § 1, and that I.C. § 48–102 closely parallels 15 U.S.C.A. § 2. *See* Six Twenty-nine Productions, Inc. v. Rollins Telecasting, Inc., 365 F.2d 478 (5 Cir. 1966); 54 Am.Jur.2d, Monopolies, § 22 (1971) at p. 680.

duciary duty he owed to appellant by negotiating to obtain a lease on the appellant's business premises at 250 Main Avenue North. It is uncontroverted from the evidence, and particularly from defendant Fries' own testimony, that Fries breached the fiduciary duty which he owed to appellant as alleged above. Fries testified as follows:

"Q. When did you first obtain financial backing in the event you chose to go into business for yourself?

"A. When?

"Q. Yes.

"A. Oh, it would have probably been in the same area of time when I had first contacted Mr. Haight about leasing the building for myself.

"Q. As early as May or June?

"A. As early as May or June of 1963." Rptr.Tr., pp. 77–78.

Fries further testified:

"Q. Did you tell either of them [Ervin or Crisman] that you were negotiating for these premises on your own?

"A. Oh, no.

"Q. Why not?

"A. Well, it was very unclear to me as to how long or if I would have a job much longer. So I was taking a natural course to provide security for myself. I was, I was very concerned as to whether I would have a job in the future." Rptr.Tr., p. 72.

Fries was the manager for the Twin Falls store, and there were no other resident managers or supervisors in Idaho representing appellant. He had the entire fortunes of the business in his hands as the manager, and as such was in a fiduciary relationship with the corporation. Restatement, Agency, 2d (1958), §§ 387, 389, 391, 191, 194; Seavey, Handbook of the Law of Agency (1964), § 147 at p. 243, § 149 at p. 244. For him to be surreptitiously attempting to obtain the leasehold interest of his employer in the premises was a gross breach of the fiduciary relationship which he owed to his employer. It is no defense to that conduct that the landlord Haight wanted a long term lease and appellant's officers determined not to execute such a lease. The original lease which appellant had with Haight had terminated on December 31, 1961, and without executing a new lease appellant had held over and continued on a month-to-month basis, apparently without any adverse results from the landlord other than requests directed by the landlord to Fries that he wanted to enter into another long term lease. It was Fries' duty to try to continue appellant's month-to-month rental, and when he initiated negotiations for himself to obtain a long term lease on the premises in May, 1963, he breached the duty which he owed to his principal as stated in Jensen v. Sidney Stevens Implement Co., 36 Idaho 348, 210 P. 1003 (1922), wherein this Court stated that the district court correctly instructed the law to be:

"'Loyalty to his trust is the first duty which an agent owes to his principal. It follows as a necessary conclusion that the agent must not put himself in such a relationship that his interests become antagonistic to those of his principal. Fidelity in the agent is what is aimed at, and as a means of securing it the law will not permit the agent to place himself in a situation in which he may be tempted by his own private interest to disregard that of his principal.'" 36 Idaho at 353, 210 P. at 1005.

Although there was no allegation in the complaint concerning a breach of fiduciary relationship, under Rule 54(c), Idaho Rules of Civil Procedure, the trial court has the duty to grant relief to which the party is entitled, even if the party has not demanded such relief in his pleadings. Nab v. Hills, 92 Idaho 877, 452 P.2d 981 (1969); Jensen v. Sidney Stevens Implement Co., *supra*. In finding that there was nothing wrong with respondent Fries' conduct in this matter, the trial court entered finding of fact number 17 in which it found that "the defendants did not cause the landlord at 250 Main Street North, Twin Falls, Idaho, to serve written notice to' quit the

premises." In view of our conclusion that the respondent Fries committed a breach of fiduciary relationship to the appellant regarding the lease, finding number 17 is set aside and that issue remanded to the trial court to determine whether or not Fries' conduct was a proximate cause of appellant's ultimately losing his tenancy in the premises, and in that event to determine the amount of damages occasioned by respondent Fries' breach of his fiduciary relationship to appellant. This also necessitates setting aside conclusion of law 2(1) since it was based upon finding of fact number 17.

■ Respondent Fries attempted to justify his breach of fiduciary relationship on the ground that appellant had not fulfilled its employment contract with him in that appellant had failed to give him certain stock which he claimed by virtue of his employment contract. In finding of fact number 6 the trial court found that "during the employment of Robert W. Fries by plaintiff, plaintiff failed to perform its contractual commitments with the defendant Robert W. Fries, and on July 26, 1963, Robert W. Fries submitted his written resignation to the plaintiff, effective August 15, 1963." We have carefully reviewed the record and find that respondent Fries' attempted justification, and the trial court's finding of fact number 6 are not supported by the evidence for three reasons. First, it is questionable whether under the agreement introduced into evidence as defendants' exhibit 18, the obligation to give the stock was that of appellant, or the personal obligation of Kenneth W. Erwin, who was not a party to the action, but who was a party to the agreement. Secondly, the provision for the additional compensation in the form of stock was, on its face,

patently ambiguous.[2] Also, respondent Fries introduced no evidence of profits to support any claim that he had wrongfully been denied stock to which he would have been entitled under paragraph 6 of that agreement. Thirdly, that whole issue was mooted because on August 15, 1963, Kenneth D. Erwin and respondent Fries negotiated their differences under the agreement and settled the stock issued by payment to Fries of $350 which Fries, who was then represented by counsel, accepted in full satisfaction of his claim to compensation under the stock provision of the agreement. Based upon the foregoing record, the trial court's finding of fact number 6 was erroneous as a matter of law and must be set aside. Mann v. Safeway Stores, 95 Idaho 732, 518 P.2d 1194 (1974).

Having determined from the record that Fries breached his fiduciary relationship to appellant, the record must be reviewed to determine whether or not respondent Kehne and D & B Supply were implicated in these actions of respondent Fries. There is substantial evidence that respondent Kehne and respondent D & B Supply, through its president Budd Kehne, knew that Fries was in a fiduciary relationship with appellant when they inquired of him concerning the lease arrangement between appellant and Haight. The record is also undisputed that both Fries and respondent Kehne knew that Haight said that the lease on the premises at 250 Main Avenue North would go with Fries. The fact that D & B Supply executed a lease on the premises four days before Fries submitted his contingent letter of resignation to appellant strongly suggests that Fries and respondent D & B Supply—through Budd Kehne—were negotiating during the time respondent Fries was in a fiduciary capaci-

---

2. Paragraph 6 describes the computation as follows: " . . . The employers agree to issue or to transfer to the manager two per cent (2%) of the total capital stock of each of said three corporations annually, the 2% being figured on the composite total profit of all three stores and not each individually, it being the intent of the parties hereto that at the end of the term of this contract the manager shall own ten per cent (10%) of the total capital stock of Twin Falls Farm & City Distributing, Inc. and Burley Farm & City Distributing, Inc. and ten percent (10%) of the total capital stock of Pocatello Farm & City Distributing, Inc., Logan, Utah."

ty with appellant, since D & B Supply could not have obtained the lease without respondent Fries being in their employ.

We recognize that at one point in the trial both Kehne and Fries testified that there were no negotiations or conversations between them regarding the lease until after Fries had terminated his employment. However, there is strong evidence in the record to indicate otherwise. Kehne himself, in his deposition taken before the trial, testified as follows in response to questions:

"Q. (By Mr. Kading) Now, Mr. Kehne, directing your attention to Page 13, Line 2 of that deposition, the following question was asked: 'How did you find out about this building being available for lease, that Farm & City was in?'

"Answer: 'Well, like I say, I knew that the building was vacant in 1959, and I knew the other one was, and the other one was not desirable—and by the other one, I mean the one they are presently in—and probably in the course of the conversation with Bob, I asked him what type of lease arrangement they had with Haight, because I have the same problem in my other locations, leases had to be negotiated, and I like to get them taken care of before they are up.'

"And the next question was: 'Who contacted Charlie Haight about leasing this building? Was it you, or Bob Fries?'

"Answer: 'I am not sure about this, but I think I told Bob to do it. I would have to check the records.'

"Do you recall those questions being propounded, and do you recall that those were your answers?

"A. Yes, I do. But at the time that you asked me these questions in this deposition, I don't think I understood your question fully. Because I think in my own mind what you were asking me and what I answered you were probably two different things. But I was under the impression that you asked me if Bob Fries was negotiating for a building and if I were negotiating for a building.

You will recall at the time of these depositions, Mr. Kading, even you mentioned in them that it was very late in the day and you were extremely tired; and I was too." Rptr.Tr., pp. 585–586.

Even Mr. Kehne's testimony at the trial was inconsistent as shown by the following reference to the record, transcript page 23:

"Q. In 1963 when you started negotiating for the rental of the property at 250 Main Avenue North in Twin Falls, did you recognize that the Farm & City was a potential source of competition for your firm?

"A. Yes.

"Q. Now, do you recall, sir, which one of you contacted Mr. Haight about the potential leasing of this building— whether it was you or Mr. Fries originally?

"A. I don't really recall.

"Q. Had you inquired of Mr. Fries prior to contacting Charles Haight what type of lease arrangement Twin Falls Farm & City had with Haight?

"A. I must have somewhere in the conversation." Rptr.Tr., p. 23.

However, we are not now constrained to hold as a matter of law that respondents Fries, Kehne and D & B Supply conspired or combined to procure the lease from the appellant in violation of I.C. § 48–101. That issue is remanded to the district court for new findings of fact and conclusions of law considering Fries' breach of his fiduciary duty and the evidence relating to respondent D & B Supply and respondent Kehne's knowledge, negotiations and conduct with Fries concerning the lease.

Appellant's second factual claim for relief consisted of the defendant Fries' breach of his fiduciary relationship to the appellant with regard to the employees of appellant. The record is clear from Fries' own testimony that when he submitted his conditional resignation on July 26, 1963, that he called in three of the four em-

ployees of the appellant's store and advised them that he was terminating and in all probability was going to work for D & B Supply, Twin Falls, and told them that there would be employment available to them if they wanted to go with him.

"Q. Can you tell us what did happen?

"A. Sure. On July 26th when I wrote my letter of resignation, I called each of the employees into the office one by one and explained to them that I was going to leave the company, that—and I explained to them why. As a matter of fact, if memory serves me correctly, I let each of them read my letter of resignation. And, as a matter of fact, one of those employees wrote the letter of—that is, typed the letter of resignation from my dictation. And I told them that I was leaving, and that I was going to be starting a store in Twin Falls in direct competition to Twin Falls Farm & City, and I was leaving August 15th if they did not fulfill the terms of my contract, and that if this in fact did transpire that I was offering each of them a job with me, and that they would have a decision, each of them to make as to whether they stayed with Farm & City or if they wanted to go to work for me because I was going to leave the employ.

"Q. When did they go to work for you?

"A. When did they go to work for me?

"Q. Yes.

"A. You mean as D & B Supply?

"Q. Yes.

"A. As I recall, August 22nd."

At this point respondent Fries was still the manager of the appellant corporation whose supervising officers were located in the middle west. His services constituted the only management and supervision which the appellant corporation had over its store in Twin Falls. For Fries, while he is under a fiduciary relationship to the appellant as its sole manager and super-

visor of the Twin Falls store, to negotiate with the employees of appellant's store for the purpose of hiring them away to a competitor for which he had arranged or was arranging his own employment as manager, constituted, as a matter of law, another breach of the fiduciary duty which he owed to appellant corporation.

Regarding the conduct of respondent Fries toward the employees, the trial court entered finding of fact number 9 as follows:

"That the defendants committed no acts causing the plaintiff's employees to terminate their employment with the plaintiff. That the termination of employment by such employees were the individual acts of the involved employees and plaintiff was aware that such employees were terminating their employment prior to the day they actually terminated the employment relationship with plaintiff." Clerk's Tr., p. 330.

Finding of fact number 9, insofar as it pertains to the acts of respondent Fries, is not supported by substantial evidence except for that portion which indicates that plaintiff was aware that such employees were terminating their employment prior to the day they actually terminated the employment relationship with the plaintiff.

This issue is remanded to the trial court to enter new findings of fact and conclusions of law determining whether or not Fries' breach of his fiduciary relationship concerning employees was a proximate cause of the employees leaving their employment, and if the court so finds, to further determine the damages suffered by appellant proximately resulting from said breach. Further consideration should also be given to whether or not the respondents Budd L. Kehne and D & B Supply, Inc., either conspired, combined, or agreed with Fries, in restraint of trade, or gave any direction or authority to the respondent Fries to hire the employees of appellant for the purpose of driving appellant out of

business, and new findings should be made on that issue.

The third issue to be considered consisted of respondent's actions in tearing down the sign placed in the window of an adjoining building by the appellant to notify its customers that it had moved its location. Appellant had rented the window space from the owner of the property who lived in California. Respondent Fries gained admittance to the building by obtaining the key from the real estate broker who was attempting to either lease or sell the property. On two occasions the sign was torn down, the second of which was admittedly done by the defendant Fries while he was manager for the respondent D & B Supply Co. Appellant had an ownership interest in the sign, and a possessory right to the building by virtue of its rental agreement with the owner. The act of respondent Fries was both a trespass to appellant's ownership and possessory rights in the sign and the window space, as well as a common law tort of "interference with prospective advantage." Calbom v. Knudtzon, 65 Wash.2d 157, 396 P.2d 148 (1964). See the discussion of the tort in Barlow v. International Harvester, 95 Idaho 881, 522 P.2d 1102 (1974), and cases cited therein. Restatement, Torts (1939), §§ 766, 767; Tentative Draft No. 14, Restatement of the Law of Torts 2d, 1969, § 766A at pp. 50 et seq.; Prosser, Law of Torts, 4th Ed. (1971), § 130 at pp. 949 et seq.; 56 Yale L.J. 885 (1947); 77 Harvard L.R. 888 (1964). See Tentative Draft No. 14, Restatement of Torts 2d (1969), § 774A, Damages, at pp. 86 et seq.

Respondent Fries testified that the reason he tore the sign down was because "it was harassing my business." However, the natural and probable result of wrongfully removing the sign from the adjoining window notifying appellant's customers that it had moved its business was to take away appellant's customers with the resultant effect of tending to drive appellant out of business. In addition to being tortious, this conduct was also a violation of I.C. § 48–104 as a matter of law, for which both respondent Fries and respondent D & B Supply, his employer in whose business he was engaged at the time of the act, were responsible.[3]

The action is further remanded for the trial court to enter findings of fact and conclusions of law finding that the respondents Fries and D & B Supply, Inc., violated I.C. § 48–104 by giving direction or authority to an act, i. e., the tearing down of the sign, for the purpose of driving appellant out of business, and to determine the damages incurred by appellant as a result of said violation of § 48–104. Said damages, such as they may be, shall be tripled as provided in § 48–114. In addition, appellant is entitled to attorney fees both in the trial and in the appeal of this matter as provided in I.C. § 48–114, to be set by the trial court on remand.

One other finding requires comment. The trial court entered its finding of fact number 29 that the plaintiff's business losses were the result of the policies and practices of the plaintiff. We have reviewed the record and find no substantial evidence to support that finding, and it is

---

3. Further evidence of respondent's intent to drive appellant out of business is evidenced by another incident wherein respondent Kehne, president of D & B Supply, mailed a memo with the following message to one of the appellant's suppliers:

"Carl—

For goodness sake—How do you get in these predicaments? The first thing you told me was you would refrain from selling my competition, Farm and City, if we did

a good job for you. Now you sell them and you bill us for their crap—

Maybe I should take my business elsewhere, if you prefer them.

Buddy"

Although respondent Kehne attempted to pass the memo off as a joke, the natural and probable consequence of such a memo was to compel appellant's supplier to cease doing business with appellant.

set aside. Mann v. Safeway Stores, *supra.* Certain business losses, such as loss of customers, etc., may flow from the violations by the respondents as found here, and while the evidence does not support a finding that all of the losses of profits, depreciation of assets and expenses incurred, which the appellant's testimony clearly established, were the result of the breaches of the respondents herein, the evidence likewise does not warrant a conclusion that none of them were caused by the conduct of the respondents. On remand, the trial court shall enter new findings regarding the causation of losses suffered by the appellant which were proximately caused by respondents' acts. All other findings of fact and conclusions of law inconsistent with this opinion, including findings of fact numbers 23 and 24, are set aside.

Reversed and remanded as to the defendants D & B Supply, Inc., an Idaho corporation, Robert W. Fries and Budd L. Kehne, for further proceedings consistent with this opinion. Judgment affirmed as to defendants John O. Deringer and Margaret Kehne. Costs to appellant.

McQUADE and McFADDEN, JJ., concur.

SHEPARD, C. J., dissents without opinion.

DONALDSON, Justice (dissenting).

I dissent. I do not believe that under the circumstances of this case that the activities of Robert W. Fries were a breach of his fiduciary duty to Twin Falls Farm and City. In addition, this issue was not pled, nor tried, in the trial court and was not specifically assigned as error on appeal. I furthermore do not believe that any of the activities of D & B Supply Co., Robert W. Fries and Budd L. Kehne come within the purview of I.C. § 48–104. The trial court made specific findings to the contrary. Findings of fact should not be set aside unless clearly erroneous. I.R.

C.P. 52(a); Ivie v. Peck, 94 Idaho 625, 495 P.2d 1110 (1972).

ON REHEARING

A petition for rehearing was filed and granted, and the matter was re-argued. The Court adheres to its previous opinions.