Justice J. JONES,
dissenting in part.
Although I concur for the most part in the Court’s opinion, I am unable to agree that Ernest, Davis and P & S (the P & S defendants) should not have to answer to a jury on the claims addressed in Parts II.B.3 and 4.a of the opinion. This case does not present a situation where each employee, acting in his or her own interest, decided to terminate employment with Wesco to pursue employment with P & S. A number of the employees who switched to P & S had the encouragement of Wesco’s managerial employees, acting on the inside, with what certainly appears to be assistance from the outside by the P & S defendants. I believe the inferences to be drawn from the evidence, when viewed most favorably to Wesco, would support the vacation of the summary judgment for the P & S defendants, leaving it to a jury to decide whether they committed actionable conduct.
With regard to Part II.B.3, I agree with the Court’s conclusion that a genuine issue of material fact exists as to whether the claimed violation of the employees’ fiduciary duty may also support Wesco’s claim for interference with prospective economic advantage. However, I disagree with the Court’s conclusion that there is no genuine of issue of material fact on this claim with regard to the P & S defendants.
In affirming the dismissal of Wesco’s claims against the P & S defendants, the Court notes that the “only evidence” Wesco put forth was the en masse resignation of Wesco’s employees, and testimony by Howe that Ernest and Davis informed him that they would attempt to take Wesco’s business. This evidence must be considered in context. The record also establishes that Davis and Ernest attempted to obtain as many Wesco employees as possible. Specifically, Davis was asked:
*900 Q. Who came up with this idea, let’s see how many of [Wesco’s] employees we can take from Wesco?
A. It would be Holley Ernest and myself.
Q. All right. When did you come [up] with this idea?
A. It would have been probably after the 12th or shortly before the 12th, sometime in that area.
In my mind, this evidence is sufficient to raise a genuine issue of material fact as to whether the P & S defendants engaged in the tort of interference with prospective economic advantage. Viewed in the light most favorable to Wesco, evidence that a substantial majority of Wesco’s workforce, including nearly all of Wesco’s top managerial employees, resigned on August 19, 2005, and began working for P & S by August 22, 2005, raises at least a colorable inference that Dayley, Johnston, Brady, Cook, and Hancock all violated their respective duty of loyalty to Wesco at the behest of the P & S defendants. It is clear from the record that these employees were not acting with the intent to go out and personally compete against Wesco. Rather, they were obviously acting, while employees of Wesco, to advance the interests of its intended competitor, P & S. It is certainly reasonable to infer from the evidence that the P & S defendants, at the least, were applauding these disloyal acts and, at the most, requesting that they be done. Absent the interest of the P & S defendants, the individual employees would not have had the impetus to treat their new employer, Wesco, in a disloyal fashion.
And, these acts are not the only acts of apparent disloyalty that might have been beneficial to the P & S defendants. The record discloses that Brady first met with Ernest and Davis on August 10. Between that time and August 19, Brady and Ernest exchanged at least 64 cell phone calls. During this time, Brady met with Ernest to scout out potential store sites for P & S. He placed a number of calls to locate store sites, and he contacted governmental agencies about business licenses for P & S. An employee may certainly make arrangements so as to personally compete against his or her present employer, but may not, without breaching his duty of loyalty, do so for the benefit of a third party who will be competing against his present employer. Brady’s plan here was not to set up his own competitive business but, rather, to assist a third-party competitor. Taking action to arrange for the acquisition of potential store sites that the third party can use to compete against the present employer would certainly be antagonistic to the present employer’s interests, just like trying to surreptitiously acquire the employer’s leasehold on premises to be used for competing against the employer, which we held to be a violation of the duty of loyalty in Twin Falls Farm & City Distrib., Inc. v. D & B Supply Co., 96 Idaho 351, 355, 528 P.2d 1286, 1290 (1974).
Furthermore, Brady was claimed by P & 5 to be its employee three days prior to his resignation from Wesco. Meanwhile, Brady’s fellow Wesco employee, Cook, was engaged in copying and deleting from his computer a variety of documents including customer lists, lists showing customer buying preferences, the history of customer purchases, and custom paint formulas.
Were these allegedly disloyal employees acting strictly for their own benefit, trying to curry favor with a new employer, or were they acting at the behest of that new employer? Where there is smoke, there may well be fire. When the inferences from the record are drawn in favor of Wesco, there is adequate evidence to support the premise that the P & S defendants were the instigators of the wrongful conduct and that they should be held to answer to a jury as to whether they committed the tort of interference with prospective economic advantage. I would vacate the summary judgment in favor of the P & S defendants on this claim.
With regard to Part II.B.4.a, I would vacate the summary judgment in favor of the P 6 S defendants. In my estimation, there is sufficient evidence, indicating that these defendants interfered with the contractual relationship between Wesco and some of its employees, to survive summary judgment. While I would agree that there is no real evidence that the P & S defendants directly interfered with the contractual relationships, there is sufficient evidence to draw the infer *901 enee that the managerial employees who solicited other employees to quit Wesco and join P & S were acting at the behest of the P & S defendants. There is certainly evidence to support an inference that the P & S defendants regarded Brady as their agent, because P & S indicated in a letter dated August 16, 2005, that Brady was an employee of P & S. This was three days prior to the effective date of his resignation from his employment with Wesco. An employee at will may terminate his own employment at any time, without liability. However, an employee may not solicit other employees to terminate their employment for the benefit of another employer without violating the duty of loyalty. D & B Supply Co., 96 Idaho at 358, 528 P.2d at 1293. If the managerial employees, Brady, Cook, and Dayley, were soliciting other employees to switch their employment at the urging of the P & S defendants, a reasonable inference to be drawn from the record, the summary judgment on this claim should be vacated and the issue be submitted to the jury for determination.
Thus, I would vacate the summary judgment against Wesco and in favor of the P & S defendants on the claims addressed in Parts II.B.3 and 4.a.